CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 07, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Jonathan Rhett Butler, *Administrator of the Estate of Marcia Butler, deceased,* | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 3:25-cv-00031 |
| Clarks Americas, Inc. | ) ) | |
| and | ) ) | |
| C. & J. Clark America, Inc., | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonathan Rhett Butler, acting as the Administrator of the Estate of Marcia Butler, brings this action against Defendants Clarks Americas, Inc. and C. & J. Clark America, Inc. (collectively, "Clarks") for survival and wrongful death damages. Plaintiff alleges that Marcia Butler was exposed to toxic chemicals from Clarks' shoes, resulting in her death.

This matter is before the court on Plaintiff's motion *in limine* to exclude Clarks' proposed evidence of chemical testing. For the following reasons, the court will grant in part and deny in part the motion.

### I.    Background

Marcia Butler purchased a pair of Clarks Breeze Step shoes ("subject shoes" or "subject shoe style") from retailer QVC in February 2022. (Compl. ¶ 7 (Dkt. 1-3); Mot. in Lim. at 6

(Dkt. 34).)  In November 2022, Clarks voluntarily recalled certain styles of shoes, including the subject shoe style.  (Compl. ¶ 7; Mot. in Lim. at 6.)  Plaintiff alleges that the subject shoes contained two toxic dyes—benzidine and dimethoxybenzidine—and that Marcia Butler suffered skin irritation and infection after wearing them.  (Compl. ¶¶ 7–15.)  The infection allegedly led to sepsis, the amputation of her toes, right foot, and lower right leg, and eventually her death.  (*Id.* ¶¶ 3, 15.)

On April 4, 2025, Plaintiff filed a complaint in state court, which Clarks timely removed to this court.  (Dkt. 1.)  Clarks answered.  (Dkt. 7.)  The court issued a scheduling order on July 25, 2025.  (Dkt. 19.)  Following several amendments, the court set Plaintiff's initial expert disclosure deadline as March 5, 2026; Clarks' initial expert disclosure deadline as April 4, 2026; the deadline for rebuttal expert opinions as April 18, 2026; the close of discovery deadline as August 3, 2026; and the dispositive motions deadline as September 1, 2026.  (Dkt. 32 ¶¶ 1–3; Dkt. 44.)

Discovery commenced.  In October 2025, under an agreed protective order, Clarks produced a set of results (the "October 2025 production") relating to chemical tests performed on Clarks shoes.  (Mot. in Lim. at 3; Defs.' Resp. at 3 (Dkt. 38).)  The test results found excessive levels of benzidine and dimethoxybenzidine in certain styles of Clarks shoes, which led to a recall of several styles.  (Mot. in Lim. at 3–4.)  Marcia Butler's shoe model was included in the recall described above.  (*Id.*)

Plaintiff initially sought additional discovery on all correspondence relating to this testing.  (*Id.*)  But Plaintiff offered "an olive branch" to Clarks "in order to streamline

discovery." (*Id.*) "From Plaintiff's perspective," Clarks "had already admitted that the toxic dyes were in the make and model of shoes that they recalled and that Marcia Butler's shoes were recalled." (*Id.*) So Plaintiff offered to avoid pursuing discovery on the testing in exchange for certain admissions and stipulations from Clarks. (Mot. in Lim. at 4–5.) After months of negotiating, the parties agreed on seven joint admissions, including that: a "Clarks Brinkley Step" shoe had failed product testing due to the presence of benzidine and dimethoxybenzidine in the fabric of the shoes; that Clarks had voluntarily recalled certain types of shoes "that [Clarks] determined had been manufactured in China" with the upper fabric containing benzidine and dimethoxybenzidine in the fabric dyes; and that the subject shoes belonging to Marcia Butler were included in this recall. (*Id.* at 5–6.)[1]

Plaintiff contends that, due to these admissions, Plaintiff's counsel refrained from obtaining experts to conduct expensive chemical testing of Marcia Butler's shoes. (*Id.* at 6.) On April 3, 2026, Defendants disclosed four expert witnesses, all of whom were medical physicians. (Dkt. 34-9.) Neither party filed rebuttal expert opinions by the deadline of April 18, 2026. (Dkt. 34 at 7.)

On April 24, 2026, Clarks produced several supplemental interrogatory responses and documents. (Mot. in Lim. at 7.) This supplemental production (the "April 2026 production") contained seventeen additional chemical tests from 2022 which were absent from Clarks' October 2025 production. (*Id.*) Defendants state they will "rely on" the October 2025

---

[1] Both parties acknowledge that there was an error in the style number referenced in the original version of Admission No. 1, and both parties have agreed to correct this error. (Pl.'s Reply at 9 n.3 (Dkt. 41); Defs.' Resp. at 5 (Dkt. 38).) The admissions reproduced in Plaintiff's motion *in limine* reflect this correction.

documents and the supplemental April 2026 production "to show that the shoes worn by Mrs. Butler never contained the subject chemicals." (Defs.' Resp. at 11.) Plaintiff protests that "Clarks appears to have disclosed the seventeen (17) additional 2022 chemical tests to contradict and wiggle out of" the joint admissions. (Mot. in Lim. at 16 n.2.) Plaintiff also states that one of his experts relied only on the testing contained in the October 2025 production to draft his expert report, (*id.* at 7), and that the April 2026 disclosure will require "new or supplemental expert reports, significant costs to Plaintiff, additional depositions, and potentially rebuttal opinions," (*id.* at 17).

On May 6, 2026, Plaintiff filed this motion. Plaintiff asks the court: (1) to "exclude any evidence, testimony, or argument concerning the interpretation of scientific chemical testing produced by" Clarks at any point; and (2) to exclude reliance on, or reference to, testing reports produced on or after April 24, 2026. (Mot. in Lim. at 8, 14–18.) Clarks responded on May 20, 2026. (Defs.' Resp.) Plaintiff replied on May 27, 2026. (Pl.'s Reply (Dkt. 41).)

## II.     Standard of Review

A motion *in limine* allows the trial court to rule on the admissibility of anticipated evidence before trial. *Luce v. United States*, 469 U.S. 38, 40 n.2, 41 n.4 (1984). When the court does resolve a motion *in limine* before trial, its decision "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [factual] proffer." *Id.* at 41. "[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41–42.

The trial court should exclude evidence on a motion *in limine* only when the evidence "is clearly inadmissible on all potential grounds." *United States v. Dumire*, No. 7:15-cr-00098, 2016 WL 4507390, at *3 (W.D. Va. Aug. 26, 2016) (quoting *United States v. Verges*, No. 1:13-cr-00222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014)). "This principle applies because 'a court is almost always better situated during the actual trial to assess the value and utility of evidence.'" *Verges*, 2014 WL 559573, at *3 (citation omitted). Thus, "a court considering such a motion may reserve judgment until trial so that the disputed evidence is placed in the appropriate factual context." *Id.*; *see also Luce*, 469 U.S. at 41 (noting that courts are "handicapped in any effort to rule on subtle evidentiary questions outside a factual context").

### III.    Analysis

### A. Most Uses of Clarks' Chemical Testing Require Expert Testimony under Rule 702.

Plaintiff argues that "any evidence, testimony, or argument" concerning the interpretation of the chemical testing—whether from the October 2025 production or the April 2026 production—requires an expert qualified under Rule 702 to explain and interpret the underlying testing. (Mot. in Lim. at 8–9.) Because Clarks did not disclose an expert to explain the chemical testing under Federal Rule of Civil Procedure 26(a)(2), Plaintiff contends that exclusion of any evidence of the chemical testing is necessary. (*Id.* at 10–11.)

Rule 702 allows expert testimony where "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Under Federal Rule of Evidence 702, the trial judge 'must ensure that any and all scientific testimony *or evidence* admitted is not only relevant, but reliable.'" *United*

*States v. Mallory*, 988 F.3d 730, 741 (4th Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)) (emphasis added). The test of reliability is "a flexible one" and considers whether the testimony "is supported by adequate validation to render it trustworthy." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260–61 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 590, 594–95). The court focuses on the "principles and methodology employed by the expert, not the conclusions reached." *Id.* (cleaned up). Several factors may guide a court's determination of reliability, including whether the evidence (1) can be or has been tested; (2) has been peer reviewed or published; (3) has a high known or potential error rate; and (4) enjoys general acceptance within the relevant scientific community. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The court agrees with Plaintiff that most uses of Clarks' chemical testing would require expert testimony.[2] By its own admission, Clarks seeks to use the chemical testing "to show that the shoes worn by Mrs. Butler never contained the subject chemicals." (Defs.' Resp. at 11.) "[B]ecause [Clarks] wants the lab report to be treated as true, and therefore as scientific knowledge, *Daubert* requires testimony on the report's reliability." *Kovalev v. Lidl US, LLC*, 755 F. Supp. 3d 878, 892 (E.D. Pa. 2024), *aff'd*, No. 24-3224, 2025 WL 3157648 (3d Cir. Nov. 12, 2025). Other courts have found that "if a party wishes to rely on laboratory testing concerning

---

[2] Of course, at this early stage, the court cannot say that all of Defendants' potential "lay testimony or argument relying on or *concerning* any such chemical testing" requires an expert opinion. (Mot. in Lim. at 14.) Clarks says that some of its testimony on the chemical testing will not implicate the "validity of the testing methods, procedures and results," and instead will describe "what Defendants, through the ordinary course of business, learned about the subject shoes . . . ; when they learned it; and what they did in response to that information." (Defs.' Resp. at 7, 9.) The court somewhat doubts that this testimony could be offered without presuming the "validity of the testing methods, procedures and results" of the chemical tests. But giving Clarks the benefit of the doubt, the court will not issue a blanket ruling excluding all "testimony[ ] or argument . . . concerning" the chemical testing, so long as that testimony is permissible fact testimony based on witnesses' personal knowledge. (Mot. in Lim. at 14.)

- 6 -

the chemical makeup of a substance, expert testimony is required to explain and interpret the results of such testing because it concerns 'scientific, technical, or otherwise specialized knowledge.'" *Kitsch LLC v. Deejayzoo, LLC*, No. LA-CV19-02556, 2021 WL 9734859, at *16 (C.D. Cal. Sep. 29, 2021); *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390, 2016 WL 11722907, at *3 (C.D. Cal. Nov. 14, 2016).

Clarks offers several arguments in opposition, but each is unavailing. First, Clarks argues that lay witnesses may opine on the chemical testing, obviating the need for an expert disclosure. But Rule 701 only allows lay testimony on opinions and inferences that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). And it cannot seriously be contested that the conclusion of the chemical testing report is "based on scientific, technical, or other specialized knowledge." *Id.* "The knowledge needed to competently testify about the [chemical testing], and the significance of its results, is 'beyond the realm of common experience' and 'require[s] the special skill and knowledge of an expert witness.'" *McCree v. City of Chester*, No. CV 0:20-867, 2023 WL 1814175, at *10 (D.S.C. Feb. 8, 2023) (quoting *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000)).

Next, Clarks says that an expert disclosure is unnecessary, as the records are admissible under the business records exception to the rule against hearsay. (Defs.' Resp. at 11–12.) This argument requires the court to examine the relationship between Rule 803(6) and Rule 702. The Fourth Circuit has not ruled on the interplay between Rule 702 and Rule 803(6),[3] and

---

[3] Clarks cites *Callahan v. Pacific Cycle, Inc.*, 756 F. App'x 216, 225 (4th Cir. 2018), for the proposition that "[d]ocuments related to product recalls, including laboratory tests, are admissible under the business records exception." (Defs.' Resp.

there is a split of authority on this question.   Some courts have held that evidence that satisfies

Rule 803(6) but that contains "scientific, technical, or other specialized knowledge" must still

meet Rule 702's requirements to be admissible.  *Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*,

No. 17-11130, 2020 WL 6793335, at *10 (E.D. Mich. Nov. 19, 2020), *aff'd*, No. 20-2257, 2022

WL 1467650 (6th Cir. May 10, 2022) ("[E]ven if the MSG reports qualified as business records

under Rule 803(6), they are nevertheless inadmissible under Rules 702 . . . ."); *Forward Commc'ns*

*Corp. v. United States*, 608 F.2d 485, 510 (Ct. Cl. 1979) ("Nothing in Rule 803 says that they may

not be excluded by some other rule.").

Other courts have found that "an opinion properly admitted under Rule 803(6) does

not necessarily need to satisfy the strictures of Rule 702."  *Horn v. Med. Marijuana, Inc.*, No. 15-

CV-701, 2021 WL 1700257, at *3 (W.D.N.Y. Apr. 29, 2021); *see also Aumand v. Dartmouth*

*Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 85 (D.N.H. 2009) ("[M]ost authorities take the view

that a party offering a document admissible as a report of regularly conducted activity under

Rule 803(6) . . . need not also show, under Rule 702, the qualifications of the document's

author to render any opinions in the report." (cleaned up)); *Shelton v. Consumer Prods. Safety*

*Comm'n*, 277 F.3d 998, 1009 n.8 (8th Cir. 2002) (declining to decide whether laboratory reports

failed to satisfy Rule 702 because the reports were admissible under Rule 803(6)); *United States*

*v. Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979) ("We see no reason to adopt an inflexible rule that

---

at 11.)  In *Callahan*, the Fourth Circuit upheld the admission of certificates of general conformity ("COGCs") under Rule 803(6).  But nowhere in *Callahan* did the court say that the COGCs were analogous to laboratory reports or that the COGCs contained "scientific, technical, or other specialized knowledge" requiring analysis under Rule 702.

- 8 -

every case requires the proponent of a business record containing expert opinion to affirmatively establish the qualifications of the person forming the opinion.").

This court respectfully joins the former group, holding that evidence satisfying Rule 803(6) may still be inadmissible under Rule 702. In other words, when a business record contains testimony on "scientific, technical, or other specialized knowledge," the record must be analyzed under both rules. This is because Rule 803(6) is an *exception* to the rule against hearsay, not an independent basis for admission of evidence. Rule 702 addresses different considerations than Rule 803(6), including examining "whether [the expert's opinion] is supported by adequate validation to render it trustworthy." *Westberry*, 178 F.3d at 260. Moreover, it would be unfair for to deprive an opposing party of the "opportunity to cross-examine [an] expert on[ ] [their] qualifications; the facts on which the opinion was based; the reasoning behind the opinion; and alternative theories, reasons, and facts," simply because the expert opinion appeared in a business record. *Horn*, 2021 WL 1700257, at *2 (quoting *Bruneau v. Borden, Inc.*, 644 F. Supp. 894, 896 (D. Conn. 1986)). It would also create an end run around Rule 26(a)'s expert disclosure requirement. Fed. R. Civ. P. 26 advisory committee's note to the 1993 amendment (noting that Rule 26(a) was intended to allow an opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.").

For these reasons, offering the chemical testing as true will require Clarks to offer expert testimony demonstrating the "scientific validity and thus the evidentiary relevance and

reliability" of the testing.  *Daubert*, 509 U.S. at 594–95.  And as such, Clarks must provide notice to Plaintiff of its expert testimony under Rule 26(a)(2).

## B. Business Records Hearsay Exception

Next, Plaintiff argues that Clarks' evidence of chemical testing should be excluded as hearsay.  (Mot. in Lim. at 13.)  Clarks counters that the records may be admitted under the business records exception.  (Defs.' Resp. at 11–12.)  The court will not exclude this evidence as hearsay at this time, as it is possible that Clarks can lay proper foundation for the application of the business records exception at trial.[4]  Plaintiff's request to exclude this evidence as hearsay is denied.

## C. Exclusion of "Late-Produced" Chemical Testing Reports

As discussed above, under Rule 26(a), Clarks should have disclosed an expert witness qualified to explain and interpret the chemical testing.  But Clarks did not do so.  Plaintiff contends that the proper remedy is the complete exclusion of the reports under Federal Rule of Civil Procedure 37(c)(1).  (Mot. in Lim. at 13–14, 15–18.)

Under Rule 37(c)(1), "when a party proposes to introduce evidence that it failed to disclose under Rule 26(a), the court shall automatically exclude such evidence from trial 'unless the failure was substantially justified or is harmless.'"  *Flatiron-Lane v. Case Atl. Co.*, 121 F. Supp.

---

[4] Contrary to Plaintiff's assertion, an expert witness is not required to lay the foundation for the application of Rule 803(6). The case that Plaintiff cites for this proposition, *United States v. Summers*, did not mention the business records exception at all.  (Mot. in Lim. at 13 (citing 666 F.3d 192, 201–02 (4th Cir. 2011)).)  Rule 803(6) only requires that the record was "(1) made contemporaneously with the act; (2) by a person with knowledge; (3) in the regular course of business; and, (4) that it was the regular practice of the business to keep such records."  *United States v. Foster*, 829 F. Supp. 2d 354, 364 (W.D. Va. 2011).  Under Rule 803(6), a "qualified witness" who may lay foundation for the business records exception is "interpreted broadly" as "someone who understands the system used to record and maintain the information."  *Id.* (cleaned up).  Nothing in the rule requires an expert witness to satisfy this hearsay exception.

3d 515, 544 (M.D.N.C. 2015). Rule 26(a), in turn, "provides that a party must disclose, without awaiting a discovery request, any witness it may use to present evidence under Federal Rule of Evidence 702, 703, or 705 governing expert testimony." *Grimm v. Gloucester Cnty. Sch. Bd.*, 400 F. Supp. 3d 444, 453 (E.D. Va. 2019), *aff'd,* 972 F.3d 586 (4th Cir. 2020). In other words, "Rule 37(c)(1) is the enforcement mechanism for the procedures set forth in Rule 26(a)" and the requirements of Rule 702. *Johnson v. Murphy ex rel. Munoz*, No. 4:10-cv-01494, 2011 WL 3099874, at *2 (D.S.C. July 22, 2011).

Because Clarks did not disclose expert witnesses on its chemical testing as required by Rule 26(a), the court must now determine whether that failure on the subject is "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has articulated the following five-factor test as "helpful in determining whether a party's nondisclosure of evidence was substantially justified or harmless" under Rule 37(c)(1). *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). These factors are: "(1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony." *Id.* at 596.

The *Sherwin-Williams* factors favor Clarks. While Plaintiff may be surprised by Clarks' chemical testing, Clarks has the "ability to cure that surprise" by disclosing an expert witness. *Id.* at 597. Additionally, allowing a late expert disclosure would not disrupt trial, which has not been scheduled. *Wei-Ping Zeng v. Marshall Univ.*, No. 3:17-cv-03008,

2019 WL 164813, at *1 (S.D.W. Va. Jan. 10, 2019) (holding that excluding expert testimony "at this stage of the litigation is unduly harsh[,] particularly[] as there is no set trial date"). Rule 37(c)(1) "is designed to prevent the ill effects stemming from a late disclosure—for example, surprise at trial, inability to cure the surprise, and disruption of trial—and those ill effects are not at issue here." *Id.* Moreover, Clarks has an understandable "explanation for [its] failure to name [an expert] witness before trial," as Clarks seemingly believed that Rule 803(6) alone was a sufficient basis to admit the evidence. *Sherwin-Williams Co.*, 318 F.3d at 597. Finally, the importance of the chemical testing evidence to Clarks' defense is great.

Accordingly, if Clarks wishes to file an expert disclosure relating to the chemical testing, the court will reopen expert discovery and allow Clarks to do so. While reopening expert discovery might result in additional expense to Plaintiff, "Plaintiff's expert's review of these documents is a cost that [may] have been incurred had the documents been" produced before the expert discovery deadline. *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, No. CIV.A. H-08-2931, 2011 WL 798204, at *6 (S.D. Tex. Mar. 1, 2011). For these reasons, the court declines to exclude the chemical testing under Rule 37(c)(1).

### D. Clarks' Admissions

Finally, Plaintiff requests the exclusion of the chemical testing in the April 2026 disclosure, contending that the documents contradict the parties' joint admissions. (Pl.'s Reply at 7.) But Plaintiff did not make this argument in his motion *in limine,* except obliquely in a footnote. (Mot. in Lim. at 16 n.2.) Plaintiff substantially raised this argument for the first time

- 12 -

in his reply.  (Pl.'s Reply at 7.)  Thus, Clarks did not have an opportunity to respond to this argument.

In any event, the court rejects Plaintiff's argument.  Even assuming *arguendo* that the April 2026 production will prove "that the shoes worn by Mrs. Butler never contained the subject chemicals," (Defs.' Resp. at 11), this would not directly contradict Clarks' admissions. None of them explicitly state Marcia Butler's shoes contained the subject chemicals. Admission No. 3 states that Clarks recalled models of shoes "that it determined had been manufactured in China with the upper fabric that was found to inconsistently contain both the chemicals," and Admission No. 4 states that the recall included the model of shoe purchased by Marcia Butler.  (Mot. in Lim. at 5–6.)  These certainly allow a plausible *inference* that Marcia Butler's shoes contained benzidine and dimethoxybenzidine.  But they do not conclusively establish, as a matter of fact, that Marcia Butler's shoes contained them.  Nor do they preclude the possibility that the shoes were recalled only "out of an abundance of caution."  (Defs.' Resp. at 6.)  While from "Plaintiff's perspective," the purpose of the admissions "was to eliminate *any* liability proof questions about benzidine and DMB being embedded in the decedent's shoes," (Pl.'s Reply at 9 (emphasis added)), the court does not read the admissions to go so far.  The court will not exclude evidence just because it might contradict inferences which can be drawn from Clarks' admissions.

### IV.    Conclusion and Order

For these reasons, the court **GRANTS in part** and **DENIES in part** Plaintiff's motion *in limine*.  If Clarks wishes to rely on the lab reports at trial, it must comply with Rule

26(a) and provide a written expert report establishing the testing's reliability and relevance under Rule 702; the court will reopen expert discovery for this limited purpose. If Clarks provides such an expert report, then Plaintiff may designate a rebuttal expert and provide a rebuttal report.

The parties are **ORDERED** to meet and confer regarding their next steps. If Clarks plans to submit a new expert disclosure, and Plaintiff plans to rebut, the parties should propose a limited modification of the Scheduling Order to reopen expert discovery. Upon receipt of the parties' submission, the court will issue a modified scheduling order resetting deadlines, including new deadlines to complete discovery and to file dispositive motions.

**IT IS SO ORDERED.**

**ENTERED** this __7th__ day of August, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE